**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

YOLANDA T. JONES,                    )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          1:26CV149
                                     )
INTERNAL REVENUE SERVICE, et al.,    )
                                     )
                    Defendants.      )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case came before the Court on Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (Docket Entry 1 (the "Application")), submitted with a form Complaint (Docket Entry 2). (See Docket Entry dated Feb. 10, 2026 (referring Application to undersigned Magistrate Judge).) The undersigned Magistrate Judge granted the Application to allow consideration of a recommendation of dismissal under 28 U.S.C. § 1915(e)(2)(B) (see Text Order dated Feb. 11, 2026) and now enters this Recommendation.

### INTRODUCTION

Plaintiff brought this action against the Internal Revenue Service and/or its Commissioner, as well as at least two and up to four of its employees (two in their official capacity). (See Docket Entry 2 at 1 (listing in caption as "Defendant(s)" "Internal Revenue Service," individual denoted as "Commissioner," and two individuals sued "in official capacity"), 2 (identifying (A) "Defendant No. 1" as individual with title of "Commissioner,"

(B) "Defendant No. 2" and "Defendant No. 3" as same two individuals named in caption as sued in their official capacity, and (C) "Defendant No. 4" and "Defendant No. 5" as two other individuals with titles of "Territory Manager" and "General Manager," respectively); see also Docket Entry 1 at 1 (naming only "Internal Revenue Service" in space for "Defendant"); Docket Entry 3 at 1 (same).)[1]  According to the Complaint, this action presents a "[f]ederal question."  (Docket Entry 2 at 3.)  However, in response to a directive to "[l]ist the specific federal statutes . . . and/or provisions of the United States Constitution that are at issue in this case" (id. (emphasis added)), Plaintiff offered only this vague listing:  "442 Civil Rights Jobs, 440 Due Process Violations[,] 890 Privacy Act, 320 Assault[,] Libel[,] Slander." (Id. (parentheses omitted).)[2]  The Civil Cover Sheet, in turn, "[c]ite[s] the U.S. Civil Statute under which [Plaintiff is] filing" (Docket Entry 3 at 1) as "5 U.S.C. § 1221; FRCP 65" (id.; see also id. (giving "[b]rief description of [that] cause [of action]" as "Emergency TRO to Stay Retaliatory Removal based on Fraudulent Saturday Record & Whistleblowing")).

---

[1]  Quotations from Plaintiff's filings apply standard capitalization conventions and omit any bold font or italics.

[2]  The four items in that listing appear to correspond to general descriptions of claims on the Civil Cover Sheet Plaintiff filed with the Complaint.  (See Docket Entry 3 at 1 (setting out "Nature of Suit" categories/codes, including "320 Assault, Libel, Slander," "440 Other Civil Rights" and "442 Employment" (both under heading "Civil Rigts"), and "890 Other Statutory Actions").)

2

The Complaint contains a section for Plaintiff's "Statement of Claim" (Docket Entry 2 at 4), with directions to "[w]rite a short and plain statement of the claim" (id.), which "[s]tate[s] as briefly as possible the facts showing that [ P]laintiff is entitled to the . . . relief sought" (id.) and "[s]tate[s] how each [D]efendant was involved and what each [D]efendant did that caused [ P]laintiff harm or violated [her] rights, including the dates and places of that involvement or conduct" (id.); see also id. ("If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.")). In the blank for Plaintiff to provide that statement, she wrote "See Claim." (Id.) Yet, Plaintiff did not append to the Complaint any additional page(s) with any such "Claim" (id.). (See id. at 1-5.)

Plaintiff did file a document entitled "Verified Complaint and Petition for Emergency TRO" (Docket Entry 4 at 2), which asserts that she "brings this action for Whistleblower Retaliation, Fraudulent Record-Keeping, and Defamation (Stigma-Plus) under the First and Fifth Amendments and the Whistleblower Protection Act" (id.; see also id. at 3 (identifying Plaintiff's claims as "Count I: Retaliation for Protected Disclosures[, ] Count II: Violation of Due Process (Stigma-Plus)[, and] Count III: Civil Conspiracy and Document Fraud")). In support of those asserted claims, Plaintiff stated, inter alia, under penalty of perjury (see id. at 1):

3

1) "Plaintiff is a 4-year federal employee" (id. at 2);

2) "Plaintiff was physically assaulted twice by [Defendant General] Manager" (id.; see also id. at 4 ("I was a victim of a physical battery by a manager on December 10, 2025." (internal parenthetical omitted)));[3]

3) another Internal Revenue Service ("IRS") "[a]cting [m]anager formally notified [Defendant] Territory Manager (TM) of the assault via email" (id. at 2), but "[Defendant] TM and [one of the official-capacity Defendants] colluded to protect the aggressor and target [] Plaintiff" (id.; see also id. at 5 ("My [computer] access has been blocked to prevent me from communicating internally while forcing me to travel back and forth to an environment with the accused."));

4) "[Defendant] TM intentionally falsified Plaintiff's [disability retirement f]orm . . . to sabotage Plaintiff's medical benefits and interfere with Department of Labor claims" (id. at 2), by "fabricating a removal date of Saturday, October 18, 2025" (id.; see also id. at 4 ("[Defendant IRS] submitted a retirement application claiming [Plaintiff] retired on October 18,

---

[3] According to an e-mail sent by Plaintiff which she appended to the above-quoted document, the first "physical[] assault[]" (Docket Entry 4 at 2) occurred on March 7, 2024, when Defendant General Manager, during a disagreement in the workplace, "touch[ed] [Plaintiff's] right arm approximately 6 to 8 times consistently invading [her] personal space" (id. at 15; see also id. ("I did not consent to it and told her I do not want her to touch me again under any circumstances.")).

2025. . . . The October 18 signature is a fabrication. . . . By back-dating my retirement, [Defendant IRS] is attempting to strip me of medical coverage for injuries sustained while on duty in December."), 5 ("[The Office of Personnel Management] has 'fast-tracked' this forged application in under 30 days.  If not stayed today, my health insurance will lapse, halting treatment for my battery-related injuries." (internal parentheses omitted)));

5) "[i]n a further act of retaliation, [] Defendants have intentionally blocked the processing of Plaintiff's Workers' Compensation [] claim, forcing [] Plaintiff into Leave Without Pay (LWOP) status under the FMLA" (id. at 2-3; id. at 3 ("By holding the claim hostage, Defendants are intentionally depriving Plaintiff of her income and medical benefits as a direct result of this workplace assault.  This financial coercion is designed to force Plaintiff's resignation . . . ."), 4 ("[Defendant IRS] is refusing to process my Workers' Compensation forms, falsely claiming I am 'retired' or 'denied based on a prior unrelated claim.'" (internal parentheses omitted))); and

6) "Defendants . . . have engaged in a coordinated campaign to defame Plaintiff's professional character" (id. at 3; see also id. ("Despite actual notice of physical assaults, [Defendant IRS's human resources and labor relations] departments have refused to move Plaintiff from the dangerous management chain and have instead disseminated false and malicious labels characterizing Plaintiff as

5

a 'problem employee' and 'unstable.' This 'poisoning of the well' by [Defendant IRS's departments] proves that all internal administrative remedies are exhausted and futile, as [Defendant IRS's] departments tasked with oversight are actively participating in the retaliatory scheme.")).

DISCUSSION

"The federal in forma pauperis statute, first enacted in 1892 [and now codified at Section 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (italics and internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if . . . (B) the action . . . (i) is frivolous or . . . (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).

As to the first of those two grounds for dismissal, the United States Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in

fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also Nagy, 376 F.3d at 256 ("The word frivolous is inherently elastic and not susceptible to categorical definition." (internal quotation marks omitted)).[4]  The second, above-quoted ground for dismissal attaches if a complaint fails "to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.; see also id. ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal brackets and quotation marks omitted)).[5]

---

[4] Notably, the Court bears "an independent obligation to determine whether subject-matter jurisdiction exists," Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010), and, to that end, "[a]s part of th[e] frivolity review under § 1915(e)(2), the Court may consider whether it has subject matter jurisdiction," Gateway Plaza Greensboro, LLC v. Spigner, No. 1:22CV1047, 2022 WL 22839643, at *1 (M.D.N.C. Dec. 29, 2022) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Jan. 30, 2023) (Eagles, J.); accord, e.g., Glenn v. Glenn, No. 1:21CV510, 2021 WL 12157701, at *2 (M.D.N.C. Dec. 16, 2021) (unpublished) (Webster, M.J.), recommendation adopted, 2022 WL 21828633 (M.D.N.C. Jan. 11, 2022) (unpublished) (Biggs, J.).  Put another way, "[a]n in forma pauperis complaint that fails to establish subject matter jurisdiction lacks an arguable basis in law, and therefore may be dismissed sua sponte." Hill v. United States, No. 1:12CV92, 2013 WL 1192312, at *4 n.5 (N.D. W. Va. Mar. 22, 2013) (unpublished); accord, e.g., Utley v. Utley-Frye, No. 5:23CV14, 2023 WL 3775069, at *3 (W.D. Va. June 2, 2023) (unpublished), recommendation adopted, slip op. (W.D. Va. Oct. 24, 2023).

[5] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal
(continued...)

Here (as documented in the Introduction), the Complaint purports to invoke the Court's federal-question jurisdiction, see 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), but fails to clearly identify any federal statute or constitutional provision which provides a basis for relief, instead vaguely adverting to general categories of claims, i.e., "Civil Rights Jobs" (Docket Entry 2 at 3), "Due Process Violations" (id.), "Privacy Act" (id.), and "Assault[,] Libel[, and] Slander" (id.). In other filings (again, detailed in the Introduction), Plaintiff more precisely invoked "5 U.S.C. § 1221" (Docket Entry 3 at 1; see also id. (describing claim under said statute as concerning "Retaliatory Removal based on Fraudulent Saturday Record & Whistleblowing")), as well as "the First and Fifth Amendments and the Whistleblower Protection Act" (Docket Entry 4 at 2; see also id. at 2-3 (describing claims under said provisions first as "Whistleblower Retaliation, Fraudulent Record-Keeping, and Defamation (Stigma-Plus)" and later as "Retaliation for Protected Disclosures," "Violation of Due Process (Stigma-Plus)," and "Civil Conspiracy and Document Fraud")).

---

[5](...continued) citation, quotation marks, and italics omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

Accepting all of Plaintiff's non-conclusory, factual allegations as true, she has not stated a viable federal claim.

The lone federal statute actually <u>cited</u> by Plaintiff, "the Whistleblower Protection Act of 1989 (WPA), 5 U.S.C. § 1221(e), [does] provide[] legal protection for whistleblowers within the civil service," <u>Murray v. UBS Sec., LLC</u>, ___ U.S. ___, ___, 144 S. Ct. 445, 450 (2024); however, it does so in conjunction with "[t]he Civil Service Reform Act ('CSRA') [which] governs judicial and administrative review of personnel actions regarding federal employees," <u>Coleman v. Pentagon Force Prot. Agency</u>, No. 1:24CV1628, 2025 WL 2345819, at *3 (D. Md. Aug. 12, 2025) (unpublished). <u>See</u> <u>De La Torre v. Fink</u>, No. 8:23CV3201, 2025 WL 460757, at *4 (D. Md. Feb. 11, 2025) (unpublished) ("'The CSRA and the WPA are integrated into a single statutory scheme.'" (quoting <u>Kerr v. Jewell</u>, 836 F.3d 1048, 1058 (9th Cir. 2016))). "Read together, the[se] statutes prohibit[] certain federal employees from taking adverse personnel actions against 'any employee' for reporting 'any violation of any law, rule, or regulation or . . . abuse of authority . . . .'" <u>Id.</u> (quoting 5 U.S.C. § 2302(b)(8)(A)); <u>see also</u> 5 U.S.C. § 1221(e)(1) (generally providing that, "in any case involving an alleged prohibited personnel practice as described under section 2302(b)(8) . . ., [the Merit Systems Protection] Board shall order such corrective action as the Board considers appropriate if the employee . . . has demonstrated that a disclosure or protected

9

activity described under section 2302(b)(8) . . . was a contributing factor in the personnel action").

But, "[t]o the extent Plaintiff seeks to bring original WPA claims before this Court, this Court is precluded from reviewing Plaintiff's claims." Coleman, 2025 WL 2345819, at *4. Indeed, "[n]o courts have jurisdiction to hear WPA claims 'in the first instance.'" Id. (quoting Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002)). Rather, "[p]ursuant to the CSRA, covered employees must first bring their WPA claims before the Office of Special Counsel ('OSC') and then the Merit Systems Protection Board ('MSPB')." De La Torre, 2025 WL 460757, at *4; accord Coleman, 2025 WL 2345819, at *4. Moreover, "[a]fter [WPA] claims have been [administratively] exhausted, only the Federal Circuit or 'any court of appeals of competent jurisdiction' is authorized to review the MSPB's decision." Coleman, 2025 WL 2345819, at *4 (quoting Zachariasiewicz v. United States Dep't of Justice, 48 F.4th 237, 243 (4th Cir. 2022)). Simply put, "for the WPA claim alone, [Plaintiff's] possible avenues of relief do not include review by this Court." De La Torre, 2025 WL 460757, at *4. As a result, the Court should dismiss Plaintiff's WPA claim under Section 1915(e)(2)(B) as frivolous (for lack of jurisdiction).[6]

_____

[6] As discussed previously, the Complaint does also contain an ambiguous reference to the "Privacy Act" (Docket Entry 2 at 3), but it lacks any supporting facts and Plaintiff's related filing, which alleges some facts (as detailed in the Introduction), "contains no
(continued...)

"The claims raised against . . . Defendants under the United States Constitution fare no better." <u>Housecalls Home Health Care, Inc. v. United States Dep't of Health & Hum. Servs.</u>, 515 F. Supp. 2d 616, 628 (M.D.N.C. 2007) (Elaison, M.J.), <u>recommendation adopted</u>, <u>id.</u> at 618 (Osteen, J.). For starters, "direct causes of action do not ordinarily exist under the United States Constitution." <u>Id.</u> at 628. "Exceptions have been made in

---

    [6](...continued)
non-conclusory allegations that would support the reasonable inference – or plausible conclusion – that [Plaintiff] is entitled to relief under the Privacy Act," <u>Tracy v. United States</u>, Civ. Action No. 16-651, 2016 WL 7664716, at *5 (D.D.C. Nov. 18, 2016) (unpublished) (internal quotation marks omitted), <u>aff'd</u>, 2017 WL 2348070 (D.C. Cir. Mar. 31, 2017) (unpublished); <u>see also</u> <u>Haywood v. Owens</u>, No. 8:19CV1025, 2019 WL 2292548, at *2-3 (D.S.C. Apr. 23, 2019) (unpublished) (reviewing limited causes of action afforded by Privacy Act), <u>recommendation adopted</u>, 2019 WL 2284931 (D.S.C. May 29, 2019) (unpublished). In other words, "[t]he allegations in [P]laintiff's [C]omplaint [and related filing] . . . are too vague and conclusory to meet minimum pleading requirements for a Privacy Act claim . . . ." <u>Hinson-Gribble v. United States Off. Pers. Mgmt.</u>, No. 5:16CV70, 2017 WL 9480265, at *5 (E.D.N.C. July 11, 2017) (unpublished), <u>recommendation adopted</u>, 2017 WL 3948531 (E.D.N.C. Sept. 8, 2017) (unpublished); <u>see also</u> <u>id.</u> ("The Privacy Act may not be used to challenge the substantive decisions by an agency reflected in its records."). Lastly (for federal statutes), Plaintiff has groused that Defendants (without specification) have engaged in "[b]ad [f]aith [u]se of FMLA [Family Medical Leave Act]" (Docket Entry 4 at 2), by "block[ing] the processing of Plaintiff's Workers' Compensation claim, forcing [her] into Leave Without Pay status under FMLA" (<u>id.</u> at 2-3 (parentheticals omitted)). "Title II of the FMLA covers leave for federal civil service employees who have more than twelve months of service." <u>De La Torre</u>, 2025 WL 460757, at *5 (internal citation omitted). As documented in the Introduction, Plaintiff's filings "make[] plain that [s]he has served the [federal g]overnment for more than twelve months," <u>id.</u> Some parts of the FMLA "provide[] a private right of action . . . ., [but] Title II does not." <u>Id.</u> "Accordingly, . . . this Court cannot hear [any FMLA] claim [from Plaintiff]." <u>Id.</u>

situations such as existed in *Bivens*[ *v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)].*" <u>Housecalls</u>, 515 F. Supp. 2d at 628. "However, a <u>Bivens</u> action is not available against federal agencies such as [Defendant] IRS," <u>White v. United States Internal Revenue Serv.</u>, No. 2:19CV9, 2019 WL 2413697, at *2 (E.D.N.C. June 6, 2019) (unpublished), <u>aff'd</u>, 785 F. App'x 168 (4th Cir. 2019), or Defendants "sued in their official capacity," <u>Howard v. Federal Bureau of Prisons</u>, No. 99-6708, 198 F.3d 236 (table), 1999 WL 798883, at *1 (4th Cir. Oct. 7, 1999) (unpublished).

At most then, "*Bivens* allows only claims based on tortious conduct against [the remaining D]efendants sued in their individual capacity." <u>Housecalls</u>, 515 F. Supp. 2d at 624. And, "[said D]efendants must have directly and personally participated in the tort. There is no *respondeat superior* liability in a Bivens action." <u>Id.</u> That principle precludes any <u>Bivens</u> claim against Defendant Commissioner because (as documented in the Introduction) "[t]here is simply no allegation that he personally played a role in the [challenged] actions." <u>Id.</u> The foregoing analysis leaves only the possibility of <u>Bivens</u> claims against (A) Defendant General Manager, who allegedly twice assaulted Plaintiff (<u>see</u> Docket Entry 4 at 2), and (B) Defendant TM, who allegedly (i) "colluded to protect [Defendant General Manager] and target [] Plaintiff" (<u>id.</u>) and (ii) "intentionally falsified Plaintiff's [disability

12

retirement f]orm" (id.), by "fabricating a removal date of Saturday, October 18, 2025" (id.).

Those allegations cannot sustain <u>Bivens</u> claims. First, Defendant General Manager's alleged assaults preceded the acts of retaliation and due process violations which form the basis of Plaintiff's claims under the First and Fifth Amendments; Plaintiff's <u>reporting of the assaults</u> (not the assaults themselves) allegedly resulted in retaliatory actions and denials of due process (as to which Plaintiff has alleged no direct participation by Defendant General Manager). As such, Plaintiff has not stated any possible <u>Bivens</u> claim against Defendant General Manager.[7] Any

---

[7] The allegations of assault cannot support the Court's exercise of jurisdiction because, apart from excessive-force-type claims against law enforcement/detention officers under the Fourth, Eighth, and/or Fourteenth Amendments, "[t]here is no federal cause of action for 'assault.'" <u>Bowman v. Canapp</u>, No. 1:09CV149, 2010 WL 686368, at *1 (W.D. Ky. Feb. 23, 2010) (unpublished). Similarly, "claims such as defamation . . . are state-based claims . . . that are cognizable in this Court under its supplemental jurisdiction, but only if there is . . . a viable federal-question claim . . . ." <u>Dickerson v. City of Charleston Police Dep't</u>, Civ. Action No. 1:10-1625, 2010 WL 3927513, at *1 (D.S.C. Aug. 26, 2010), <u>recommendation adopted</u>, 2010 WL 3909497 (D.S.C. Sept. 30, 2010); <u>accord, e.g.</u>, <u>Harr v. WRAL-5 News</u>, No. 5:20CV362, 2021 WL 141697, at *3 (E.D.N.C. Jan. 14, 2021), <u>aff'd</u>, 853 F. App'x 859 (4th Cir. 2021). A narrow exception exists to allow a plaintiff to assert a due process claim "under what is sometimes referred to as [the] 'stigma plus' test, . . . [which requires a showing that], in the course of defaming a person, a public official . . . subject[ed the person] to a *present* injury such as termination of government employment." <u>Ridpath v. Board of Governors Marshall Univ.</u>, 447 F.3d 292, 310 n.16 (4th Cir. 2006) (emphasis in original). Regardless, Plaintiff's allegations that, at unspecified times, unspecified Defendants (and others not named as defendants) "engaged in a coordinated campaign to defame Plaintiff's
(continued...)

<u>Bivens</u> claim against Defendant TM likewise falls short, as the collusion accusation does not "suffice [because] it tenders naked assertions devoid of further factual enhancement," <u>Iqbal</u>, 556 U.S. at 678 (internal brackets and quotation marks omitted), and the falsification accusation does not suffice because a document submitted by Plaintiff shows that someone other than Defendant TM prepared the form listing Plaintiff's retirement date as October 18, 2025 (<u>see</u> Docket Entry 4 at 13). In sum, Plaintiff has failed to state a <u>Bivens</u> claim against Defendants General Manager and TM, because Plaintiff has not alleged factual matter sufficient to show that they committed any federal constitutional violation.

Alternatively, the Court should conclude that the <u>Bivens</u> implied-cause-of-action-exception does not extend to the federal constitutional claims asserted by Plaintiff. "In *Bivens*, the [Supreme C]ourt permitted an implied cause of action for plaintiffs whose Fourth Amendment rights were violated by federal officers." <u>Williams v. United States</u>, Civ. Action No. 21-537, 2021 WL 1720230, at *3 (D. Md. Apr. 30, 2021) (unpublished). Subsequently, "[t]he [Supreme] Court allowed *Bivens*-type remedies twice more, in a Fifth Amendment gender-discrimination case and in an Eighth Amendment

---

[7](...continued)
professional character" (Docket Entry 4 at 3), by "characterizing [her] as 'problem employee' and 'unstable'" (<u>id.</u>), constitute nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice," <u>Iqbal</u>, 556 U.S. at 678.

Cruel and Unusual Punishments Clause case." <u>Ziglar v. Abassi</u>, 582
U.S. 120, 121 (2017) (internal citations omitted). "The Supreme
Court has refused to extend *Bivens* a number of times and expansion
of the *Bivens* remedy is now disfavored." <u>Williams</u>, 2021 WL
1720230, at *3. Accordingly, even if Plaintiff had alleged facts
sufficient to show retaliation in violation of the First Amendment
and/or lack of due process in the handling of her retirement
application in violation of the Fifth Amendment, any <u>Bivens</u> claim
"would nevertheless be subject to dismissal," <u>id.</u>, as the "claims
asserted by [Plaintiff] . . . do not fit into any of the recognized
causes of actions to which *Bivens* has been extended," <u>id.</u> <u>See,
e.g.</u>, <u>Pinar v. Dole</u>, 747 F.2d 899, 904 (4th Cir. 1984) ("[I]n *Bush
v. Lucas*, 462 U.S. 367 (1983), the Supreme Court declined to permit
a federal employee to bring a *Bivens*-type cause of action . . .
against his supervisors for alleged violations of his first
amendment rights." (parallel citation omitted)).

Finally, the Court must note that Plaintiff has requested
injunctive relief, including presumably in relation to her claims
for retaliation for reporting workplace assaults (in violation of
the First Amendment) and for (related) denial of due process via
falsification of her retirement date (in violation of the Fifth
Amendment). (<u>See</u> Docket Entry 2 at 4 (stating "See Relief
Statement" in space for articulation of "relief [ P]laintiff asks
the [C]ourt to order"); Docket Entry 4 at 3 (seeking, under heading

15

of "Prayer for Relief," order "stay[ing] the illegal removal [of Plaintiff's employment status], restor[ing] pay and benefits, and enjoin[ing] Defendants from further interference with Plaintiff's career and health").)   "[U]nlike the *Bivens* remedy, which [the Supreme Court] ha[s] never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing <u>entities</u> from acting unconstitutionally."   <u>Correctional Servs. Corp. v. Malesko</u>, 534 U.S. 61, 74 (2001) (emphasis added); <u>see also</u> <u>Pinar</u>, 747 F.2d at 909 (endorsing position "that federal courts have the authority to grant injunctive relief to the victim of a constitutional violation by virtue of their jurisdiction to decide all cases arising under the Constitution").   The Court thus theoretically possesses jurisdiction to order injunctive relief if Plaintiff can show that Defendant IRS (through its supervisory personnel) violated her federal constitutional rights.

The question remains "whether th[is C]ourt's power to grant injunctive relief should be exercised in light of the comprehensive and constitutionally adequate remedial scheme Congress has established in the CSRA [which includes the WPA]." <u>Pinar</u>, 747 F.2d at 910.   Fourth Circuit authority indicates that the Court should answer that question in the negative:

> A review of the remedial provisions of the CSRA supports the finding that Congress clearly intended the comprehensive remedies available to [federal employees] to be exclusive. . . .

> The absence of a provision for direct judicial review of prohibited personnel actions[, i.e., retaliation barred by the WPA,] among the carefully structured remedial provisions of the CSRA is evidence of Congress' intent that no judicial review in district court be available for the actions involved in this case.

Id.; see also id. at 912 (noting with approval decision in Hallock v. Moses, 731 F.2d 754 (11th Cir. 1984), "affirm[ing] the [district] court's dismissal of a federal employee's claims for . . . injunctive relief grounded on the first and fifth amendments," alleging that supervisors "had harassed and retaliated against her . . . because she filed a valid employee grievance and spoke out in opposition to unlawful acts suffered by her").[8]

## CONCLUSION

Plaintiff has asserted claims over which this Court lacks jurisdiction (or should refrain from exercising its jurisdiction) and otherwise has failed to state a claim.

---

[8] In the alternative, the Court should deem Plaintiff's federal constitutional claims unripe, as her filings confirm that administrative processes underlying her claims have not concluded (see, e.g., Docket Entry 5 at 1 ("On 02/11/2026 Plaintiff accessed personal email from [Defendant IRS] stating [her] retirement has not been sent to [the Office of Personnel Management].")). See American Fed'n of Gov't Emps. v. Office of Special Counsel, 1 F.4th 180, 188 (4th Cir. 2021) (emphasizing "particular role ripeness doctrine plays in the administrative context," including "prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," as well as "protect[ing] agencies from judicial interference until an administrative decision has been formalized" (internal quotation marks omitted)).

17

**IT IS THEREFORE RECOMMENDED** that this action be dismissed under 28 U.S.C. § 1915(e)(2)(B).

                                    /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**
February 13, 2026